

Frederick L. Cottrell, III
302-651-7509
Cottrell@rlf.com

July 17, 2015

VIA CM/ECF FILING AND HAND DELIVERY

Hon. Chief Judge Leonard P. Stark
U.S. District Court of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Room 6124
Wilmington, DE 19801-3555

    Re:    <u>Yodlee, Inc. v. Plaid Technologies Inc., No. 14-1445-LPS-CJB</u>

Dear Hon. Leonard P. Stark:

Plaid's core technical documents production included roughly one thousand pages of code, as well as vast additional documentation. This production includes "core technical documents related to the accused product(s), sufficient to show how the accused product(s) work(s), including but not limited to non-publicly available operation manuals, product literature, schematics, and specifications," as required by the Scheduling Order. D.I. 26 ¶ 7(b).

The Scheduling Order, like this Court's Default Standard for Discovery, requires production only of core technical documents "including but not limited to operation manuals, product literature, schematics, and specifications." *Id.*; D. Del. Default Standard for Discovery ¶ 4(b). Plaid's documents are precisely these. They include support discussions between Plaid and its users, suggestions from Plaid on how to use its named products, explanations of how they work, and other technical material. For example, Plaid produced a document entitled "Anatomy of Connect," containing many pages of example code that can be used to invoke the Connect product and explaining how the Connect product works. *See* Ex. A (PLA0000037-62). Another document Plaid produced, "Getting Started with Plaid Connect," details how Connect works and thus is much like a user manual. *See* Ex. B (PLA0000063-70). Indeed, Yodlee admits that "Plaid produced information akin to user manuals." D.I. 46 at 1.

Although Plaid was required only to provide a manual or the like for each product "sufficient to show how [it] works," Plaid produced virtually *every* technical document in its possession, save for source code. Plaid included not only all technical documents on its own extensive website, which includes descriptions of how its products work, but also extensive code, descriptions, and explanations from the Plaid section of the site Github. Github is a website wherein innovators like start-up Plaid can share technical documents about their software. Plaid also produced highly confidential documentation.

Hon. Chief Judge Leonard P. Stark
July 17, 2015
Page 2

Yodlee notes that a minority of Plaid's production was labeled "HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY." D.I. 46 at 2. Yodlee appears to fault Plaid for not having more highly confidential information. Plaid's commitment to openness is not a failing. Indeed, precisely by putting so much information on its own public website as well as Github, Plaid enabled Yodlee to perform a pre-filing investigation which—had Yodlee conducted it—would have shown that Plaid does not infringe the patents-in-suit. Yodlee complains that Plaid's core technical document production to date did not enable Yodlee to adequately explain whether and how Plaid infringes the patents-in-suit. D.I. 46 at 3. Yodlee does not explain how it could file a lawsuit accusing Plaid of infringement if the public information was not sufficient to enable it to understand how the Plaid products work.

Yodlee complains that many of the documents Plaid produced were designed with developers—its customers—in mind. D.I. 46 at 1-2. But that is precisely what is contemplated by the rules; each of the enumerated categories in Paragraph 7(b) of the Scheduling Order and the Court's Default Standard is a customer-facing document. An "operation manual" explains how to operate the product; "product literature" is given to customers about the product; and "schematics" and "specifications" describe the product so that potential customers can evaluate whether it suits their needs. While these are not the only "core technical documents," they illustrate the meaning of the requirement that the core technical documents demonstrate "how the accused product(s) work(s)." They must show how the products work from a customer's perspective, not in every hidden detail of implementation. Yodlee's reading of Paragraph 7 of the Scheduling Order would convert the requirement for production of core technical documents at the outset of the case into an immediate requirement for full disclosure of every last detail about every single product a company makes.

Yodlee also contends that, because it does not find Plaid's technical documentation sufficient to support its infringement contentions, Plaid was also required to produce its source code. D.I. 46 at 3. That is not required at this stage.

As this Court has recognized, "a general request for the source code and related documents places a heavy burden on" defendants. *Via Vadis Controlling GMBH v. Skype, Inc.*, No. 12-193-RGA, 2013 WL 646236, at *3 (D. Del. Feb. 21, 2013). Yodlee notes that the Protective Order in this case contains provisions attempting to protect the confidentiality of source code. D.I. 46 at 3; *see* D.I. 27 ¶¶ 9-10; May 13, 2015 Oral Order. Of course, these provisions are not foolproof; they rely on trust in those who have access to source code to strictly observe their limitations. *See*, *e.g.*, ¶ 10(i)-(l), (n), (o), (q). Moreover, they make source code production greatly burdensome. They require a secure room with a specially equipped and configured stand-alone computer at the producing party's outside counsel offices, available at specified times. D.I. 27 ¶ 10(a)-(h). The parties must work out minute details of this set-up. *Id.* ¶ 10(c). The room must be access-controlled. *Id.* ¶ 10(h). Removing source code from the room is a complex endeavor, including processes for resolving disputes about the purpose of removing the code. *Id.* ¶ 10(i)-(l). Thus, far from alleviating the heavy burden that source code production entails, the Protective Order demonstrates just how burdensome such production is.

Plaid should not have to bear the additional burden of source code production at this point. It has still not answered in this case because its motion to dismiss the entire case on ineligibility

grounds is still pending. D.I. 11, 12. In addition, it moved for a stay on discovery pending the resolution of its motion to dismiss. D.I. 30, 31. Plaid should not be required to produce source code until the Court rules on that motion.

By contrast, Yodlee asks this Court to allow Yodlee to amend its infringement contentions and to substitute new claims for the 49 claims it chose. D.I. 46 at 3. Yodlee's proposal would undo months of work on the case, and generate a drastic waste of resources. Plaid is currently preparing invalidity contentions for the 49 claims now left in the case; much of that work would be for naught, and more would be required, if the Court were to take Yodlee's suggestion. If the Court were inclined to agree, then the invalidity contentions deadline of August 12, 2015 would need to be postponed. Indeed, Yodlee's proposal serves no purpose but to impose additional costs and require additional efforts from Plaid, a small start-up; Yodlee does not suggest that any unspecified claim it seeks to add differs in substance from the ones it currently asserts. Yodlee thinks this relief justified because Yodlee served its infringement contentions on July 15, 2015, before the Court holds its hearing on the present discovery disputes. D.I. 46 at 3. Yodlee fails to note that the July 15 deadline was an extension *it* proposed. *See* D.I. 42; June 17, 2015 Oral Order. If Yodlee truly believed that it was entitled to Plaid's source code, and that it would not be able to produce accurate infringement contentions without source code, Yodlee could have asked for the Court to extend this deadline again, until *after* the Court had resolved the current discovery disputes. Yodlee did not do so.

Neither of the cases Yodlee cites allowed a plaintiff to assert additional claims because of an alleged deficiency in a defendant's core technical documents production. *Technology Licensing Corp. v. Blackmagic Design Pty Ltd.*, No. 13-CV-05184-SBA-MEJ, 2015 WL 307256 (N.D. Cal. Jan. 22, 2015), ordered a patentee to assert fewer claims, *rejecting* the patentee's argument that it needed discovery of "technical documents" to "narrow its claims." *Id.* at *3. Contrary to Yodlee's characterization (D.I. 46 at 3), the court only required the defendant to state "which of its own products utilize" a specific model number of a video sync separator, *not* "technical documentation" for that separator. *Id.* at *4. And while *Fleming v. Cobra Electronics Corp.*, No. 12-CV-392-BLW, 2013 WL 1760273 (D. Idaho Apr. 24, 2013), refused to require a patentee to immediately narrow the case beyond the 60 then-asserted claims, it said nothing about any need for technical documents. The court simply noted that while "a claim selection process might streamline this litigation at some point," it would not order reduction when "discovery ha[d] just begun." *Id.* at *3. *Fleming* is inapposite; Plaid does not seek a further claim reduction right now.

Plaid should not be required to produce its source code at the very outset of the case, before it has even answered the complaint and before Yodlee has identified which Plaid products it accuses of infringement. *See* D.I. 47 (Plaid's letter brief challenging Yodlee's deficient identification of accused products). Plaid's core technical documents production was more than sufficient in these circumstances.

Hon. Chief Judge Leonard P. Stark
July 17, 2015
Page 4

                              Respectfully,

                              */s/ Frederick L. Cottrell, III*

                              Frederick L. Cottrell, III (#2555)

cc:     All Counsel of Record (via CM/ECF)