**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| YODLEE, INC.,<br><br>            Plaintiff,<br><br>    v.<br><br>PLAID TECHNOLOGIES INC.,<br><br>            Defendant. | C.A. No. 14-1445-LPS-CJB<br><br>JURY TRIAL DEMANDED |

**DEFENDANT PLAID TECHNOLOGIES INC.'S LIMITED OBJECTIONS TO
THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

OF COUNSEL:

**GIBSON, DUNN & CRUTCHER**
Brian M. Buroker (admitted *pro hac vice*)
Blair A. Silver (admitted *pro hac vice*)
1050 Connecticut Avenue, NW
Washington, DC 20036-5306
Telephone: (202) 955-8541
BBuroker@gibsondunn.com
BSilver@gibsondunn.com

Neema Jalali (admitted *pro hac vice*)
Alexander N. Harris (admitted *pro hac vice*)
555 Mission Street
San Francisco, CA 94105-0921
Telephone: (415) 393-8200
NJalali@gibsondunn.com
AHarris@gibsondunn.com

Frederick L. Cottrell, III (#2555)
Arun J. Mohan (#6110)
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Cottrell@rlf.com
Mohan@rlf.com

*Attorneys for Defendant
Plaid Technologies, Inc.*

Dated:  June 9, 2016

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................................................................1

ARGUMENT .................................................................................................................................2

I.     The Court Should Address the Two Asserted Dependent Claims from the '548 and '520 Patents That the Report Did Not Reach Even Though Both Parties Fully Briefed Them ...........................................................................................................3

II.    The Report Misreads *Enfish* and *DDR* in Recommending Denial of the Motion to Dismiss the '077 and '783 Patents.......................................................................5

III.   The Report Compounds Its Legally Erroneous Analysis of the '077 Patent by Recommending Denial as to the '535 and '515 Patents, Which Claim an Ineligible Abstract Business Idea................................................................................12

CONCLUSION...........................................................................................................................15

# TABLE OF AUTHORITIES

**Page**

### Cases

*Accenture Global Services, GmbH v. Guidewire Software, Inc.*,
    728 F.3d 1336 (Fed. Cir. 2013).........................................................................8, 9, 10, 13

*Alice Corp. Pty. Ltd. v. CLS Bank, Int'l*,
    134 S. Ct. 2347 (2014)....................................................................................2, 4, 6, 8, 15

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
    776 F.3d 1343 (Fed. Cir. 2014)..................................................................................4, 5, 6

*CyberSource Corp. v. Retail Decisions, Inc.*,
    654 F.3d 1366 (Fed. Cir. 2011)........................................................................................9

*DDR Holdings, LLC v. Hotels.com, LP*,
    773 F.3d 1245 (Fed. Cir. 2014)........................................................................................9

*Device Enhancement LLC. v. Amazon.com, Inc.*,
    No. 15-762-SLR, 2016 WL 2899246 (D. Del. May 17, 2016)..................................7

*Enfish, LLC v. Microsoft Corp.*,
    --- F.3d ---, 2016 WL 2756255 (Fed. Cir. May 12, 2016)..............................2, 6, 8

*Intellectual Ventures I LLC v. Capital One Bank (USA), N.A.*,
    792 F.3d 1363 (Fed. Cir. 2015).........................................................8, 9, 10, 12, 14

*Intellectual Ventures I LLC v. Erie Indem. Co.*,
    134 F. Supp. 3d 877 (W.D. Pa. 2015).......................................................................14

*Intellectual Ventures I LLC v. Mfrs. & Traders Trust Co.*,
    76 F. Supp. 3d 536 (D. Del. 2014).............................................................................14

*Internet Patents Corp. v. Active Network, Inc.*,
    790 F.3d 1343 (Fed. Cir. 2015)..........................................................................4, 6, 12

*Jericho Sys. Corp. v. Axiomatics, Inc.*,
    No. 3:14-CV-2281-K, 2015 WL 2165931 (N.D. Tex. May 7, 2015), *aff'd*,
    2016 WL 945275 (Fed. Cir. Mar. 14, 2016) (per curiam).......................................11

*Netflix, Inc. v. Rovi Corp.*,
    114 F. Supp. 3d 927 (N.D. Cal. 2015) ......................................................................14

*OIP Techs., Inc. v. Amazon.com, Inc.*,
    788 F.3d 1359 (Fed. Cir. 2015).......................................................................4, 10, 12, 14, 15

## TABLE OF AUTHORITIES
### (cont'd)

**Page**

*Pres. Wellness Techs. LLC v. Allscripts Healthcare Sols.*,
    No. 2:15-CV-1559-WCB, 2016 WL 2742379 (E.D. Tex. May 10, 2016) .............................11

*In re Smith*,
    815 F.3d 816 (Fed. Cir. 2016) .......................................................................................................6

*In re TLI Commc'ns LLC Patent Litig.*,
    --- F.3d ---, 2016 WL 2865693 (Fed. Cir. May 17, 2016) ........................................................7

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014).................................................................................5, 6, 11, 15

*Versata Dev. Grp. v. SAP America, Inc.*,
    793 F.3d 1306 (Fed. Cir. 2015).........................................................................6, 10, 13, 14

*Visual Memory LLC v. NVIDIA Corp.*,
    No. 15-789-RGA, 2016 WL 3041847 (D. Del. May 27, 2016).................................................6

**Statutes**

35 U.S.C. § 112(f)..............................................................................................................................6

**Rules**

Fed. R. Civ. P. 72(b)(2).....................................................................................................................1

Local Rule 7.1.5(b) ...........................................................................................................................1

Pursuant to Federal Rule of Civil Procedure 72(b)(2) and Local Rule 7.1.5(b), Defendant Plaid Technologies Inc. ("Plaid") objects to portions of Magistrate Judge Christopher J. Burke's Report and Recommendation (the "Report"), filed on May 23, 2016 (D.I. 185).

## INTRODUCTION

Yodlee initiated this sprawling seven-patent lawsuit against start-up Plaid Technologies on December 1, 2014, with a complaint that was not limited to any specific subset of claims from the seven patents. Plaid immediately moved to dismiss all seven counts of the complaint and, because the complaint was not limited to a subset of the claims, addressed why all claims of all seven patents-in-suit are ineligible. The Report addresses only one claim from each patent, thus leaving a number of asserted claims entirely unaddressed.[1]

Plaid objects to the Report for two primary reasons.

1. The Court should accept the Report's recognition that representative claims of three of these patents—the '451, '548, and '520 Patents—are ineligible, but should further find asserted dependent claim 36 of the '548 Patent and asserted dependent claim 38 of the '520 Patent ineligible. The two dependent claims that need to be addressed merely add generic "aggregation" and "synchronization" limitations that contribute nothing more than conventional data manipulation. They too are ineligible. By addressing just these two additional dependent claims, the Court can and should dismiss, with prejudice, Counts III-V of the Complaint.

2. The Court should decline to accept the Report's recommendation as to the other four patents-in-suit and instead find the claims of each of those patents (or, at a minimum, the claims

---

[1] In between the time that Plaid's motion was filed and the time that the Report issued, Yodlee was required to narrow its list of asserted claims to 21 claims in total. D.I. 26 ¶ 7(e). Yodlee chose, and is thereby limited to, the following set of claims: Claims 1-3, 6-9, and 12 of the '077 Patent; claims 1, 11, 14-15, 18, 20, and 30 of the '783 Patent; claim 8 of the '451 Patent; claims 20 and 36 of the '548 Patent; claim 38 of the '520 Patent; claim 6 of the '535 Patent; and claim 7 of the '515 Patent. *See* D.I. 153 Ex. I.

in each that Yodlee asserts here) to be ineligible.  The Report correctly explains that the ideas Plaid identified at the heart of each patent are abstract.  But the Report concludes that Plaid's motion should be denied in part, by making two mistakes of law—one for each step of the test announced in *Alice Corp. Pty. Ltd. v. CLS Bank, Int'l*, 134 S. Ct. 2347 (2014).

First, the Report misreads *Enfish, LLC v. Microsoft Corp.*, --- F.3d ---, 2016 WL 2756255 (Fed. Cir. May 12, 2016), as announcing a "capture an important aspect of the claim" inquiry that allows a claim to survive *Alice* if an "important" limitation in the claims (as construed) is not part of the proposed "abstract idea."  D.I. 185 at 15-18, 28.  That is not what *Enfish* holds; nor could it overrule *Alice*, which dictates a different approach.  For the '077 and '783 Patents, the Report applies its incorrect approach to find that the claims require a "script" specific to each website to gather information from that site, which is not captured in the abstract idea.  *Id.* at 19-21, 27-28.  But that concept is also abstract.  Similarly, the Report errs in recommending denial as to the '535 and '515 Patents due to the presence of a longstanding business idea of improving a categorization system.  Under a proper analysis, Yodlee's claims are directed to abstract ideas.

Second, for each of these four patents, the Report concludes that factual disputes— concerning whether certain limitations are conventional and how preemptive the claims are— cloud the "inventive concept" analysis.  That too is incorrect.  The Federal Circuit and Supreme Court resolve whether limitations are conventional when evaluating motions to dismiss and motions for summary judgment presented without evidence, indicating that the questions at issue are not factual in nature.  And, as the Report itself recognizes, a claim lacking an inventive concept is ineligible regardless of how broadly or narrowly preemptive it is.  Under the correct legal approach, all seven patents should be dismissed, in their entirety.

## ARGUMENT

2

**I.     The Court Should Address the Two Asserted Dependent Claims from the '548 and '520 Patents That the Report Did Not Reach Even Though Both Parties Fully Briefed Them**

The Report acknowledges that Plaid moved to dismiss all 162 claims Yodlee initially asserted in its complaint (D.I. 185 at 5), but does not analyze whether two of the claims Yodlee still asserts here, claim 36 of the '548 Patent and claim 38 of the '520 Patent, are eligible. *See* D.I. 185 at 64. That issue can be readily remedied by the Court finding those two additional dependent claims ineligible and thereby resolving all asserted claims of three of the patents—those from the '451, '548, and '520 Patents.

The Report incorrectly states that claim 36 of the '548 Patent and claim 38 of the '520 Patent are *not* asserted here even though they are in fact asserted in Yodlee's final Election of Asserted Claims. D.I. 185 at 64; D.I. 153 Ex. I.[2] Based on that incorrect statement, the Report recommends denial of Plaid's motion for those claims or any other claims in those patents even though it "declines to make determinations about the eligibility of" them. D.I. 185 at 64.

The Report also states that "Plaid provided very little in the way of analysis as to why" the dependent claims "in these patents were subject-matter ineligible." D.I. 185 at 64. In fact, despite a 20-page limit, Plaid's motion to dismiss analyzed each of Yodlee's claims specifically, by number (D.I. 12 at 5-19), and its reply responded to every limitation and dependent claim that Yodlee contended merited further review (D.I. 20 at 4-13). Given that the case has been narrowed to 21 claims, at a minimum, the Report should have analyzed the remaining claims beyond the 7 claims the Report did analyze. And, given how circumscribed was Yodlee's defense of its dependent claims (even with the additional pages it requested), an extensive

---

[2]     Plaid attached Yodlee's final Election of Asserted Claims as Exhibit I to its declaration supporting its recent (still pending) stay motion, which identified that claim 36 of the '548 Patent and claim 38 of the '520 Patent *are* asserted here, and that one of the claims the Report analyzes (claim 21 of the '520 Patent) is *not* asserted. D.I. 153 Ex. I.

analysis of the dependent claims was not required.  *See*, *e.g.*, *Alice*, 134 S. Ct. at 2359-60 (holding ineligible 208 claims without specific analysis of each claim); *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1345-51 (Fed. Cir. 2014) (affirming dismissal of complaint alleging infringement of 224 ineligible claims); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1361-62 (Fed. Cir. 2015) (affirming dismissal while describing the "dependent claims" in general terms).  Where, as here, "[t]he motion to dismiss addresse[s] the dependent claims, arguing that they do not contain any limitations that make them" eligible, the court should rule on those claims.  *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1349 (Fed. Cir. 2015).

Dependent claim 36 of the '548 Patent and dependent claim 38 of the '520 Patent are not patent-eligible.  They add nothing inventive to their ineligible parent claims—only recitations of "an aggregation service for aggregating client-specific records prior to transmission" and "a synchronization service for keeping data on" the device "synchronized with data from sources on the Internet and from the aggregation service."  These additional limitations fail to add an inventive concept—much less to redirect the claim away from the abstract idea of transforming data from one form to another.  *See* D.I. 12 at 16-17; D.I. 20 at 11.  Aggregation—i.e., collecting together—and synchronizing—i.e., updating—are not inventive, but pedestrian and themselves abstract.  Indeed, the common specification teaches only that "[a]ll data requested by any one user is aggregated under that user's ID" and that "synchronization (updating) may be performed."  '548 Patent, 9:2-3, 12:61-62.  Claim 36 of the '548 Patent and claim 38 of the '520 Patent go no farther.  They do not specify any particular method for aggregation or synchronization, likely because these common computing concepts have long been performed.  *See* D.I. 20 at 11; *Content Extraction*, 776 F.3d at 1347 ("collecting data" is abstract);

*Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014) ("updating an activity log" is "routine").  These claims, like the other claims-in-suit, are ineligible.

Thus, the Court should ensure that dismissal of Counts III-V of the complaint (alleging infringement of the '451, '548, and '520 Patents) is final by holding all of the now-asserted claims ineligible and precluding Yodlee from attempting to switch claims.  Indeed, at the motion to dismiss hearing, Magistrate Judge Burke warned Yodlee that it would not be able to assert the full 21 claims *in its final infringement contentions* if the Court dismissed some patents.  *See* D.I. 61 at 143:17-144:18.  Now that Yodlee has finally elected its 21 claims and lost on some, it should not be permitted to assert any more.  Counts III-V should be dismissed in their entirety.

## II.   The Report Misreads *Enfish* and *DDR* in Recommending Denial of the Motion to Dismiss the '077 and '783 Patents

The Report legally errs in its analysis of the '077 and '783 Patents.

**A.** With respect to the '077 Patent, the Report correctly finds that "the concept of 'gathering data specific to a person from a plurality of Internet sites,' or of 'logging into websites and gathering personal data from them' constitute abstract ideas."  D.I. 185 at 13-14.  But the Report inaccurately concludes, based on a misreading of *Enfish*, that it is "not clear cut" whether the claim is "directed to" these ideas.  *Id.* at 15-18.  It so concludes by adopting a legally incorrect framework for the "'directed to' inquiry," which it erroneously suggests is dictated by *Enfish*.  *Id.* at 18.  Under the Report's framework, if the "asserted abstract idea does not capture an important aspect of" the claim, the claim is not "directed to" that idea at all—and thus the eligibility challenge fails at *Alice* "step one."  *Id.* at 28.

That approach is incorrect.  Under *Alice*, courts do not require every "important aspect" of the claim to be "capture[d]" in the "asserted abstract idea."  *Id.*  Rather, courts regularly find a claim to be "directed to" an idea even if the claim contains many specific, supposedly important

5

limitations not captured in that idea.  For example, the Federal Circuit has found claims to be "directed to price determination" even though they recited "a specific approach" to determine the price using "a hierarchy of organizational and product groups."  *Versata Dev. Grp. v. SAP America, Inc.*, 793 F.3d 1306, 1334-35 (Fed. Cir. 2015) (citation omitted).  And it has found claims ineligible even though they required the use of "specific data fields."  *Content Extraction*, 776 F.3d at 1347-49; *see also In re Smith*, 815 F.3d 816, 818 (Fed. Cir. 2016) (finding a nine-step claim with over 400 words to be "directed to rules for conducting a wagering game"); *Ultramercial*, 772 F.3d at 712, 715 (finding an eleven-step claim with 349 words to be "directed to … a method of using advertising as an exchange or currency").

Courts allow these challenges to proceed past step one because, under *Alice*, it is step *two* that determines whether a limitation beyond the abstract idea is inventive.  134 S. Ct. at 2357. *That* is where courts ask "what else is there in the claims before us?"  *Id.* at 2355 (punctuation omitted).  All "additional features" must be tested in this crucible.  *Id.* at 2355, 2357.

*Enfish* does not, and cannot, overrule these cases.  *Enfish* upheld a narrow means-plus-function claim requiring a particularly unusual database structure disclosed in the specification under the claim interpretation approach dictated by 35 U.S.C. § 112(f).  2016 WL 2756255, at *5 & n.3; *see also Visual Memory LLC v. NVIDIA Corp.*, No. 15-789-RGA, 2016 WL 3041847, at *5, *9-13 (D. Del. May 27, 2016) (distinguishing *Enfish* on this basis to hold technological claims ineligible).  Rather than upending *Alice* and its progeny, *Enfish* simply found that "the focus of the claims" was on this odd database structure.  *Id.* at *4-7.  *Enfish* thus *reaffirmed* the *Alice* methodology, which considers "the *basic character* of the subject matter" (*Internet Patents*, 790 F.3d at 1348 (emphasis added); *see Enfish*, 2016 WL 2756255, at *4 (quoting *Internet Patents*)).  It does not allow a patentee to unilaterally confer itself eligibility by

6

declaring isolated limitations "clearly needed."  *See* D.I. 185 at 18-20.  Unsurprisingly, shortly after deciding *Enfish*, the Federal Circuit distinguished the case, holding ineligible a claim—like Yodlee's—"directed to the use of conventional or generic technology in a nascent but well-known environment."  *In re TLI Commc'ns LLC Patent Litig.*, --- F.3d ---, 2016 WL 2865693, at *3 (Fed. Cir. May 17, 2016).  Indeed, this Court recently applied *Enfish* and dismissed a multi-patent complaint where the proffered abstract idea, "division of labor," concededly did not capture every important element (such as "offloading graphical processing to the remote-application") of the "computer-centric" claim.  *Device Enhancement LLC. v. Amazon.com, Inc.*, No. 15-762-SLR, 2016 WL 2899246, at *9-10 (D. Del. May 17, 2016).  If this Court adopts the legal analysis laid out in the Report, patent challengers will face inconsistent instructions from this Court on how to frame their identified abstract ideas.

Even if *Enfish* did announce a new standard, which it did not, the Report misapplies that standard.  The Report acknowledges that the claim language and specification emphasize the abstract idea of "gathering."  D.I. 185 at 18-19.  However, it reasons, the Court's construction of "gathering" recites a "site-specific script"; this concept is not included in Plaid's proffered abstract idea; and therefore Plaid has not met its burden under step one.  *Id.* at 19-20.  But reciting a "site-specific script" does not change the nature and direction of the claim.  That the claim (as construed) requires that the system have, for each site, a "script" that can gather information from the site means only that the system must have software that can accomplish the result of gathering information from the site.   *See* Ex. A[3] ("script" means "instructions").  Yodlee's recitation of (in effect), "Software that achieves the abstract idea," does not redirect the claim.  Thus, the Supreme Court found the claims in *Alice* to be "directed to" the "abstract idea"

---

[3]    Unless otherwise indicated, all exhibits are attached to the Declaration of Alexander N. Harris, filed together with these objections.

of "intermediated settlement" even though they recited software that would accomplish that result—and, indeed, recited more specific steps that were not inherent in the idea of intermediated settlement. *Alice*, 134 S. Ct. at 2352 n.2, 2356, 2359-60.

Moreover, the Report stops short of considering whether the concept to which it finds the '077 Patent to actually be directed—logging into websites and gathering personal data from them "through the use of 'site-specific' scripts or data" (D.I. 185 at 20)—is abstract. The Report should have answered that question. If a court disagrees that the claim is directed to the defendant's identified idea, it should still dismiss if it finds the claim directed to a different idea that is nonetheless abstract. For example, in *Accenture Global Services, GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336 (Fed. Cir. 2013), the Federal Circuit disagreed with the district court that the claim was directed to the broad idea of "organizing data," but found that the more specific idea the claim was really directed to was "nonetheless an abstract concept." *Id.* at 1344. And *Enfish* did not reverse simply because the district court's proffered idea did not capture the claim, but because the Federal Circuit concluded that the "self-referential" database structure, to which the claim was truly directed, was *not* "an abstract idea." 2016 WL 2756255, at *5.

Here, the idea the Report found the '077 Patent directed to—logging into websites and gathering personal data from them, *using site-specific instructions*—is abstract. "Tailoring information," such as instructions, "is also an abstract, overly broad concept long-practiced in our society." *Intellectual Ventures I LLC v. Capital One Bank (USA), N.A.*, 792 F.3d 1363, 1370 (Fed. Cir. 2015). Indeed, the specification teaches that this limitation requires only that a *human* programmer write *some* software to accomplish the result: "a *human* knowledge worker" could "create and supply directive scripts containing the site logic needed by gatherer 67 to find and retrieve data from a WEB site." '077 Patent, 11:5-8 (emphasis added). This idea for "human

8

thought" to develop site-specific software "is merely an abstract idea." *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011); *contra* D.I. 185 at 23 n.13. "Although not as broad as the [Report]'s abstract idea of [logging into websites and gathering personal data from them], it is nonetheless an abstract concept." *Accenture*, 728 F.3d at 1344.

**B.** The Report also errs in relying on the same "site-specific script" limitation to conclude that Plaid has not shown that "the '077 patent fails to contain an inventive concept." D.I. 185 at 21-24. The Report correctly recognizes that the claim must be limited to a *particular way* to perform gathering—i.e., it must claim *how* to gather. *Id.* at 22, 32, 36, 53-54. However, the Report reasons that "it appears plausible" that the using-a-site-specific-script limitation specifies at some level "how" to achieve the result, as did the claim in *DDR Holdings, LLC v. Hotels.com, LP*, 773 F.3d 1245 (Fed. Cir. 2014). D.I. 185 at 22-23. This too is legal error.

Again, the "site-specific script" element adds nothing more than the general *idea of having* some script—i.e., software—for each site. The claims do not actually recite any particular script. Saying "our software should really include some kind of instructions to enable it to do what we want it to do" does not tell a reader anything about how to achieve the result, i.e., what the instructions *are*. The claim in *DDR*, by contrast, was limited to a specific process for generating a second webpage: integrating "information associated with the commerce object" and "visually perceptible elements" derived from the retrieved source page data and "visually corresponding to the source page" into a new page. 773 F.3d at 1250, 1257. As the Federal Circuit subsequently held, unlike the claim in *DDR*, "[r]equiring the use of a 'software' 'brain' 'tasked with tailoring information and providing it to the user'" does *not* confer eligibility. *Intellectual Ventures*, 792 F.3d at 1370-71. Similarly, requiring the use of software scripts tasked with gathering information from websites only specifies the goal—not a technical

method of achieving that goal.

The Report also concludes that there remains a factual dispute about whether the claimed elements are "routine and conventional," since "the '077 patent itself asserts" that its methods were "clearly needed."  D.I. 185 at 23.  But the Supreme Court and Federal Circuit, including when deciding motions to dismiss and motions for summary judgment on the basis of the patents alone, have not simply accepted such self-serving pronouncements in the specification.  *E.g.*, *OIP*, 788 F.3d at 1363 (affirming dismissal even though "the specification" listed a "core advantage of the invention" not captured in the abstract idea).  That is because "the important inquiry for a § 101 analysis is to look to the claim," not the "specification."  *Accenture*, 728 F.3d at 1345.  If "the[] supposed benefits are not recited in the claims," they are not "relevant" under "section 101."  *Versata*, 793 F.3d at 1335.

Finally, the Report also states that there are factual disputes about how broadly the '077 Patent preempts "the relevant field of applications for logging into websites and gathering data that will then be represented to the user."  D.I. 185 at 23-24.  But no appellate court has ever found a material factual dispute in making an eligibility determination.  There are none here.  As the Report later correctly explains, "preemption arguments" cannot save a claim from ineligibility.  D.I. 185 at 43-44 n.26; *accord*, *e.g.*, D.I. 20 at 2-3; *OIP*, 788 F.3d at 1362-63 (both collecting cases).  And, as Plaid showed in its motion and the Report does not challenge, under the proper *Alice* analysis, the asserted claims of the '077 Patent—claims 1-3, 6-9, and 12 of the '077 Patent—are ineligible.  D.I. 12 at 8-11; D.I. 20 at 5-6.  As is apparent from independent claims 1 and 7, the claims' basic character is "gathering data specific to a person" from websites.  User interfaces (in dependent claims 2 and 8) are conventional software features.  *Intellectual Ventures*, 792 F.3d at 1370.  Aggregation (in dependent claims 3 and 9) is also conventional, as

10

explained in Part I above.  And parsing (in dependent claims 6 and 12) is well known, as the specification admits.  '077 Patent, 12:40.

**C.**  The Report then repeats the same misreading of *Enfish* in its analysis of the '783 Patent.  *See* D.I. 185 at 27-33.   In its *Alice*-step-one analysis, the Report correctly holds that "retrieving and storing personal information from multiple sources … is an abstract idea," but erroneously concludes that Plaid has not shown that the '783 Patent "is 'directed to'" that idea.  D.I. 185 at 27.  The Report reasons that this idea does "not capture[]" the concept that the information is securely stored and requires identity verification for access.  *Id.* at 27-28.  But the Report never attempts to square this reasoning with its conclusion that "*logging into websites* and gathering personal data from them" is an "abstract idea[]."  *Id.* at 13-14 (emphasis added).  The Report faults Plaid for failing to directly state that the abstract concept of "retrieving … personal information" entails logging into access-controlled websites.  *Id.* at 28.  But, as explained above, courts have not demanded that the proffered abstract idea capture every nuance of the claim, and the Report should have asked whether the idea *it* found the claim directed to—gathering *from access-controlled sites*—is also abstract.  It is.  *See Ultramercial*, 772 F.3d at 712, 715 (an idea for providing a means for "consumer access to" content "restrict[ed] [from] general public access" is "an abstraction"); *Pres. Wellness Techs. LLC v. Allscripts Healthcare Sols.*, No. 2:15-CV-1559-WCB, 2016 WL 2742379, at *7 (E.D. Tex. May 10, 2016) ("tiered access" to "secure and private" medical records is an abstract idea) (collecting cases); *Jericho Sys. Corp. v. Axiomatics, Inc.*, No. 3:14-CV-2281-K, 2015 WL 2165931, at *4-5 (N.D. Tex. May 7, 2015), *aff'd*, 2016 WL 945275 (Fed. Cir. Mar. 14, 2016) (per curiam) ("a complex method" for providing "access" to secure information is nonetheless abstract).

**D.**  The Report also repeats its legally erroneous interpretation of the "inventive concept"

11

requirement from the '077 Patent in its step-two analysis of the '783 Patent, which it admits is "a close question" and "not free from doubt."  D.I. 185 at 30, 32.  The Report concludes, however, that Plaid's motion should be denied because the '783 Patent requires storing *some* "protocol" (construed as a "software script") "for instructing the processor how to access the securely stored personal information," which the Report finds somewhat akin to *DDR*.  D.I. 185 at 29-33.  Yet the Report admits that Plaid is "right[]" that "the claim does not (neither on its face, nor via Chief Judge Stark's claim construction) actually say anything specific about 'what those instructions *are*' nor claim a '*particular* instruction.'"  *Id.* at 30.  Indeed, even the specification is not limited to any particular "manner in which" the system would "access" personal information, but generically describes a host of possible "procedures."  '783 Patent, 9:29-10:31.  As explained above, that fact renders *DDR* inapposite, and defeats eligibility.  *See also* D.I. 20 at 7.  The idea of *having* "instructions specific to th[e] information provider" (D.I. 185 at 29, 32) does not confer eligibility.  The claims must, as in *DDR*, say what the instructions are—i.e., "how the result is accomplished."  *Internet Patents*, 790 F.3d at 1348.  And, again, the specification's statements about the problems with the previous, manual "access process" (D.I. 185 at 32-33) do not render "automat[ing]" that process inventive.  *OIP*, 788 F.3d at 1363.

As the Report does not challenge, asserted claims 1, 11, 14-15, 18, 20, and 30 are ineligible.  *See* D.I. 12 at 11-12; D.I. 20 at 6-8.  Independent claims 1, 18, and 20 make clear that the basic character of the claims is gathering and "delivering non-public personal information" from access-controlled sites.  And outputting information in various web formats (in dependent claims 11, 14-15, and 30) is conventional.  *See Intellectual Ventures*, 792 F.3d at 1369-70.

### III.  The Report Compounds Its Legally Erroneous Analysis of the '077 Patent by Recommending Denial as to the '535 and '515 Patents, Which Claim an Ineligible Abstract Business Idea

**A.**  The Report compounds the errors it made in analyzing the '077 Patent in its

discussion of claim 6 of the '535 Patent and claim 7 of the '515 Patent (the only claims from those patents Yodlee continues to asserts here).   Consistent with this pattern, the Report first correctly explains that using "past transaction information to predict future transactions or for business purposes," and "variations" of that business concept, are "abstract ideas."   D.I. 185 at 59.   But the Report then holds that Plaid has not shown that the patents are "directed to the abstract idea," because Plaid's proffered idea does not include a concept also recited in the '535 and '515 Patents—"having a categorization system that grows and improves in its ability to do its job, based on the consistent incorporation of new information."   *Id.* at 58-61.   This is error.

As with the '077 Patent, the Report relies primarily on the "specifications"—in particular, their isolated statement, "*A* key ingredient in [the] system is an ability to grow and improve the network categorization system."   '535 Patent, 19:43 (emphasis added); *cf.* D.I. 185 at 60 (calling this "*the* key ingredient" (emphasis added)).   As explained above, however, the eligibility analysis does not look to the specification's *ipse dixit* declaring how inventive the patent is.   It looks to the claims.   *Accenture*, 728 F.3d at 1345; *Versata*, 793 F.3d at 1335.

The Report did note that this feature is reflected in two "wherein" clauses at the end of the claims, providing that "a probability algorithm is used in developing the" categories, which are "periodically amended according to further information that is collected and processed."   D.I. 185 at 60-61.   But these ancillary limitations cannot redirect the claim into eligibility.   For one, the Report errs in holding that they were not captured in "the abstract idea [Plaid] has put forward" (*id.* at 61):   A human using past transactions to predict future ones would use probabilistic reasoning and mentally amend categories according to new information.

Moreover, even if the Report's conclusion were correct, it should have answered whether the idea to which *it* finds the claims directed—"having a categorization system that grows and

improves in its ability to do its job, based on the consistent incorporation of new information"—
"is also an abstract, overly broad concept long-practiced in our society." *Intellectual Ventures*,
792 F.3d at 1370.  It is.  The Federal Circuit already has held such adaptation of business content
abstract.  *Id.* at 1369-70.  Similarly, the court has held "price optimization" abstract and therefore
dismissed claims on "using a computerized system" to "automatically determin[e]" an
"estimated outcome," based on "statistics includ[ing] number of sales of the product made at
each" price.  *OIP*, 788 F.3d at 1361-64; *see also*, *e.g.*, *Versata*, 793 F.3d at 1334 ("the concept of
price determination by using organizational and product group hierarchies" is abstract).  And
other courts have held that "the idea of using composite categories" dynamically derived from
"simple categories" is "abstract, even if it was wholly novel at the time of filing."  *Netflix, Inc. v.
Rovi Corp.*, 114 F. Supp. 3d 927, 939 (N.D. Cal. 2015); *see also*, *e.g.*, *Intellectual Ventures I
LLC v. Mfrs. & Traders Trust Co.*, 76 F. Supp. 3d 536, 547 (D. Del. 2014) (holding ineligible
categorization claims, which included limitations such as "chang[ing] a natural association of
items within at least one of the one or more user-selected categories"); *Intellectual Ventures I
LLC v. Erie Indem. Co.*, 134 F. Supp. 3d 877, 919 (W.D. Pa. 2015) ("adding sub-categories, or
further detail to those categories" is abstract).  The business idea for a transaction-categorization
system that improves by "amend[ing]" categories, too, is abstract.

   **B.**  The Report also errs in its analysis of step two.  It notes that the Court gave the same
construction to the "collection" terms in the '535 and '515 Patents as it did to the "gathering"
terms in the '077 Patent.  D.I. 185 at 62.  So, for the same reasons as it concludes that disputes
remain as to whether collecting information using site-specific scripts was routine and
preemptive in the '077 Patent, it concludes that these disputes remained for the '535 and '515
Patents as well.  As explained above, this analysis is incorrect.  Whether "other different methods

of collecting information from websites exist" (D.I. 185 at 62) is not the question:  Even if "the claims do not preempt all" such methods, that "do[es] not make them any less abstract." *OIP*, 788 F.3d at 1362-63.  In addition, Yodlee stipulated to a December 1, 2005 priority date for the '535 and '515 Patents, substantially later than the June 1, 1999 priority date for the '077 Patent.  Ex. B at 16.  At a minimum, by the time the '535 and '515 Patents were filed, the gathering process described in the '077 Patent was conventional:  It was practiced in, for example, the '077 Patent itself, which issued on March 6, 2001.  Yodlee's priority date concession is an admission that the "collection" process of the '535 and '515 Patents was not inventive.

The Report also reasons that there are "material disputes as to the conventionality and preemptive effect of the claims' requirement that description characteristics and expenditure categories must be periodically amended according to further information that the system collects and processes."  D.I. 185 at 63.  This too is incorrect.  As explained above, numerous cases have found such changes conventional.  *See*, *e.g.*, *OIP*, 788 F.3d at 1364 ("the addition of steps to test prices and collect data based on customer reactions does not add any meaningful limitations to the abstract idea"); *Ultramercial*, 772 F.3d at 716 ("updating an activity log" is "routine"); *Alice*, 134 S. Ct. at 2359 ("adjusting" records "as transactions are entered" is "purely conventional" (punctuation omitted)).

The claims of the '535 and '515 Patents, like the claims in the other five patents-in-suit, are ineligible.  The Court should dismiss these patents too.  Indeed, even if the Court adds only dismissal of the '535 and '515 Patents (Counts VI-VII of the complaint), this would cull the litigation to only the two core patents.

## CONCLUSION

This Court should decline to adopt the Report in part, and should dismiss all counts of the complaint for failure to state a claim upon which relief can be granted.

15

OF COUNSEL:

**GIBSON, DUNN & CRUTCHER**
Brian M. Buroker (admitted *pro hac vice*)
Blair A. Silver (admitted *pro hac vice*)
1050 Connecticut Avenue, NW
Washington, DC 20036-5306
Telephone: (202) 955-8541
BBuroker@gibsondunn.com
BSilver@gibsondunn.com


Neema Jalali (admitted *pro hac vice*)
Alexander N. Harris (admitted *pro hac vice*)
555 Mission Street
San Francisco, CA 94105-0921
Telephone: (415) 393-8200
NJalali@gibsondunn.com
AHarris@gibsondunn.com


Dated:  June 9, 2016

/s/ Frederick L. Cottrell, III
Frederick L. Cottrell, III (#2555)
Arun J. Mohan (#6110)
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Cottrell@rlf.com
Mohan@rlf.com

*Attorneys for Defendant*
*Plaid Technologies, Inc.*

16

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 9, 2016, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to registered participants, and further certify that I caused copies of the foregoing document to be served upon the following via electronic mail:

Robert M. Oakes (#5217)
Christopher A. Winter (#5817)
FISH & RICHARDSON, P.C.
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19899
Telephone: (302) 652-5070
Facsimile: (302) 652-0607
oakes@fr.com
cwinter@fr.com

David M. Barkan
James Huguenin-Love
FISH & RICHARDSON, P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071
barkan@fr.com
huguenin-love@fr.com

Benjamin K. Thompson
FISH & RICHARDSON, P.C.
1180 Peachtree St. NE
Atlanta, GA 30309
Telephone: (404) 892-5005
bthompson@fr.com

*/s/ Arun J. Mohan*
Arun J. Mohan (#6110)
mohan@rlf.com

17